JOHN G. WILLIAMS v. FORT WORTH & NEW ORLEANS
RAILWAY COMPANY.

No. 3249.

1. **"At" often Means "In" or "Within."**—It can not be denied that *at*, when used in reference to place, frequently means *in* or *within*, but not always. It sometimes denotes nearness or proximity, which is its primary signification. It is less definite than *in* or *on*.

2. **Same—Facts Illustrating.**—The railway company obligated itself by bond that it should "faithfully perform the matters and things  *  *  *  up to and including the intersection at Waxahachie in said contract stipulated for, on or by the first day of August, 1886." Within the time the railway company constructed the road with intersection (with another railway track) within one hundred yards of the city limits. *Held*, such construction was a substantial compliance with the terms of the contract in this particular.

3. **Railway Bonus Notes Given as Installments.**—Citizens of Waxahachie subscribed as a bonus $25,000, payable in four installments at stated progress of the enterprise. The railway company executed its bond with sureties in same amount to trustees for benefit of subscribers to the bonus. Williams had executed a note for $800 payable in installments of $200 each, and two had been paid. Suit upon the remaining two in the County Court. Williams resisted payment, among other reasons because the railway company had not maintained its depot in Waxahachie as it had been originally fixed, etc. He reconvened, making the sureties upon the bond parties, and asking recovery of the amount of the two installments already paid and for damages for the removal of the depot. *Held:*

1. As the defendant sought a recovery upon the bond which did not extend beyond the obligation to construct the road up to the making of the intersection, etc., he could not recover.

2. The trustees to whom the bond was payable were not made parties. They were necessary parties in suit upon the bond without showing their refusal to act.

3. The other parties interested in the bond should have been brought in. It could not be contemplated that each beneficiary should maintain his separate action.

4. **Contract Construed.**—The courts will not engraft a condition upon a contract in contravention of the expressed intention of the parties (suit upon railway subsidy notes made payable as the work progressed), and the court below erred in holding that the failure of the railway company to maintain its depot as originally located worked a forfeiture of the right of recovery upon the note sued upon.

5. **Same—Remedy.**—Williams' remedy for injury from a wrongful removal of depot would be for damages caused to his property thereby, and against the railway company.

APPEAL from Ellis. Tried below before Hon. JAMES W. BROWN, Special District Judge.

The opinion states the case. Both parties appeal.

*A. A. Kemble*, for Williams.—1. The court erred in finding as a conclusion of law, from the facts, that the intersection of plaintiff's line of railway with the Central Texas & Northwestern Railway, as originally made, was a compliance with plaintiff's contract in that particular.

(1) The language of the articles of agreement of even date with the note sued on, to-wit, "Who propose to make donations in aid of the

construction of the railway of said company through Ellis County, and to an intersection with the Central Texas & Northwestern Railway at Waxahachie." In this language and its structure and meaning the word "at" means "within," in connection with the intersection.

(2) The court erred in finding that such an intersection as was thus made outside, and failure to make the same inside, the corporate limits of the city was not a breach of plaintiff's contract, and that plaintiff ought to recover on that breach.

2. (1) The contract, the bond, and the note sued on are all parts of one contract.

(2) The amount agreed upon as damages shown in the bond is liquidated damages, and not a penalty.

(3) The damage is liquidated, and the measure of damage on a breach is, to each party to the contract, the amount he paid or agreed to pay of the $25,000 subsidy.

(4) The bond is joint in form but several in fact, and can be recovered upon by each injured party severally. Green v. Banks, 24 Texas, 11; 1 Pars. on Con., 7 ed., pp. 13, 14, and cases cited; Stachley v. Power, 28 Texas, 328; Story Eq. Plead., sec. 226; Cradock v. Goodwin, 54 Texas, 582; Green's Plead. and Prac., secs. 201, 227.

(5) The parties (E. A. Du Bose and others) to whom the bond was made were trustees merely, and took and held the bond in trust for each of the subscribers to the subsidy to the extent of his subscription, and in equity the beneficiary may sue in his own right. The cestui que trust may sue. Walker v. Abercrombie, 61 Texas, 69; Morris & Cummings v. Schooner, 62 Texas, 35.

(6) The scope and meaning of the whole contract, bond, and note is that the beneficiaries in the bond are each entitled to not exactly an aliquot part, but each to a separate and distinct part or interest, and in such case each may sue for his own portion thereof without making the other beneficiaries parties. Story Eq. Plead., sec. 207a.

(7) The contract binds the company to "construct, equip, operate, and maintain its railway, and to establish and maintain its depot." The bond, in so far as it operates on the sureties, is binding only "up to and including the intersection at Waxahachie." But the contract binds the company to maintain, as well as establish, and the bond, as part of the contract, fixes in liquidated damages the amount of recovery on a breach, this recovery to be, however, against the principal only in case of a breach after completion of the road.

*Grace & Templeton*, for Railway Company.—1. By the very terms of the contracts of the parties, the maintenance of the depot as originally located, and the continued maintenance and operation of the line through the city, are not made conditions precedent to the collection of the subsidy notes, but, on the contrary, such notes are collectible in installments

as the work is completed, the last installment being collectible "when said road shall have been completed to Waxahachie, and said intersection and said depot constructed." Jackson v. Stockbridge, 29 Texas, 394; Rose v. Railway, 38 Texas, 49; Seley v. Railway, 2 Ct. App. C. C., sec. 87; Railway v. Butler, 50 Cal., 574; Davis & Co. v. Cobban, 39 Iowa, 392; Traer v. Stewart, 46 Iowa, 15; Lord v. Belknap, 55 Mass., 279.

2.    The bond, which counsel for appellee Williams insists liquidates his right of recovery for any breach of it or of the main contract to the amount of his note paid, and defeat of recovery of all sums unpaid, is not so conditioned, and by its very terms is security only for the performance of "the matters and things  *  *  *  to be performed up to and including the intersection at Waxahachie;" and the maintenance of the depot as originally located, and the continued maintenance and operation of the line through the city, are not conditions of said bond.

3.    If the acts complained of by appellee Williams are breaches of any contract by the railway company, his right of defense resulting therefrom is limited to recoupment of the damages by him sustained; especially as it is not claimed that the company wholly failed to comply with its contracts.    Railway v. Butler, 50 Cal., 574.

4.    The damages, if any, actually sustained by appellee Williams from the breaches of contract complained of by him were not reasonably within the contemplation of the parties to the contracts when made, and such damages, if any, are too uncertain, both in their nature and in respect to the cause from which they proceed, to be recovered, any claim for nominal damages not being within the jurisdiction of the court in which this suit was instituted.    1 Suth. on Dam., sec., 5, p. 94; Griffin v. Clover, 16 N. Y., 489.

5.    It appears that the Fort Worth & New Orleans Railway Company, in connection with another company, does operate and maintain a line from Fort Worth to Waxahachie, Texas, and maintains a suitable depot for freight and passengers in Waxahachie, which, in so far as its rights to collect the note in suit is concerned, in the light of the facts proved, is a compliance with its contract.    Railway v. Stockton, 51 Cal., 328.

6.    The word "at," as used in respect to the intersection with the Central Texas & Northwestern Railway, does not mean "within," and the conclusion of the trial judge in this respect was correct.    Railway v. Brownsville, 45 Texas, 88; Bridge Co. v. Railway, 6 Paige (N. Y. Ch.), 554; Hurley v. Marsh, 1 Scam. (Ill.), 329; Ray v. The State, 50 Ala., 172; The State v. Receivers of Taxes, 38 N. J. Law, 299.

MARR, JUDGE, *Section A.*—The Fort Worth & New Orleans Railway Company instituted suit in the County Court of Ellis County against John G. Williams, June 28, 1887, to recover on a note for $800, payable in four installments, at stated times, of $200 each, two of which

installments had been paid. The note sued on was one of many going to make up the sum of $25,000, contributed by the citizens of Waxahachie, Texas, and vicinity in aid of the construction of the road of the Fort Worth & New Orleans Railway Company from Fort Worth, Texas, to Waxahachie, and to an intersection with the Central Texas & Northwestern Railway at Waxahachie, under a written contract between the railway company, acting by its president, and such contributing citizens acting through a committee. By this contract the railway company obligated itself "to construct, equip, operate, and maintain a standard gauge railway from the city of Fort Worth, Texas, in and to the city of Waxahachie, Texas, intersecting the Central Texas & Northwestern Railway at Waxahachie, and to establish and maintain, in Waxahachie, Texas, a suitable freight and passenger depot," binding itself to complete certain portions of the work within specified dates, "the said railway and necessary depot to be fully completed in and to said city of Waxahachie, and said intersection, by June 1, 1886." Said citizens agreed to donate $25,000 in aid of the construction of said railway, also right of way and depot grounds in Waxahachie at one of three places; the sum donated to be placed in notes, payable in installments as the work progressed, which notes were to be held by trustees and collected for the benefit of the company in installments as each specified portion of the work was completed, the last installment of each note being collectible "when said road shall have been completed to Waxahachie and said intersection, and said depot constructed." The railway company also entered into bond, of contemporaneous date with above contract and note, in the sum of $25,000, payable to the citizens' committee, conditioned that said company should "fully and faithfully perform the matters and things by the contract above spoken of stipulated to be performed, up to and including the intersection at Waxahachie, in said contract stipulated for, on or by the 1st day of August, 1886," the sum named in which bond, in case of a breach, was to be construed, not as a penalty, but as liquidated damages. This bond, the contract above mentioned, and all notes given thereunder, were by express agreement to be considered and construed together as showing the contract between the parties.

The defendant below pleaded the foregoing facts and contracts, and that the note sued on was executed thereunder, and brought in the sureties on said bond, and alleged as breaches of the contract:

"1. That 'at' as used in said contracts in respect to the intersection mentioned meant 'in,' and that no intersection with the Central Texas & Northwestern Railway had ever been made in Waxahachie.

"2. That while the plaintiff did construct its line through Waxahachie, and erect a depot in said city, and for a while used both, yet within a few months it abandoned its line in the city and its depot, as

to any general public use, and has since used the line and depot of the Central Texas & Northwestern Railway Company through the city.

"3.   Ownership of property by the defendant in Waxahachie, and purchase of other property upon faith of the location of the depot, and depreciation in value of such property by reason of the abandonment.

"4.   In reconvention against the company and the sureties on its bond for the sums paid on the note sued on, and other damages claimed, the whole not to exceed $800."

Exceptions were sustained to so much of defendant's answer as claimed damages for depreciation of his property by reason of the abandonments pleaded, to which ruling exceptions were reserved, but the same do not appear to be relied on in defendant's cross-appeal.

The cause came on for trial before Hon. Jos. W. Brown, special judge, March 14, 1890, when the following facts were proved and found as facts by said trial judge:

"1.   The facts hereinbefore stated.

"2.   That the railway company performed its contract in building and equipping its railway, including the erection and construction of its depot in the city of Waxahachie and an intersection with the Central Texas & Northwestern Railway, within the time and as stipulated in its contract, but said intersection was about one hundred yards outside the corporate limits of Waxahachie, and before the said intersection was so made the defendant gave the company notice that he would not consider it a compliance with the contract.   As to the meaning of the word 'at' in respect to the intersection, no testimony was introduced except the written contracts.

"3.   That the company operated and maintained its entire railway, as well as its depot, in Waxahachie for a few months after construction, when the Central Texas & Northwestern Railway Company constructed a line from its depot, then its terminus in Waxahachie, to an intersection with the railway of the Fort Worth & New Orleans Railway Company, about one-half mile west of such depot of the Central Texas & Northwestern Railway, and about two hundred yards west of the corporate limits of Waxahachie, since which time the two roads have been operated as a continuous line from Fort Worth to Garrett, Texas, the same trains using both lines and using the depot of the Central Texas & Northwestern Railway Company, which is located nearest the business portion and center of population of Waxahachie, and within the corporate limits of the city—the line of the Central Texas & Northwestern Railway running through the city; and since this arrangement has been in force the line of the Fort Worth & New Orleans Railway Company through the city, and its depot, have been practically abandoned as to any general public use of the same, the line being sometimes used as a sidetrack and occasionally for passing trains,

while the depot has been converted into a residence for an officer of the road."

From these facts the trial judge concluded, as matters of law:

"1. That the intersection as originally made was in compliance with the contracts between the parties.

"2. That the failure to maintain the depot as originally constructed, and failure to operate the line through the city, worked a forfeiture of right of recovery on the note sued on.

"3. That such failure did not entitle defendant to recover back the sums paid on the note."

Hence, judgment generally in favor of defendant against the plaintiff, and judgment in favor of the sureties of the railway company against the defendant Williams. From this judgment both plaintiff and defendant below have appealed, and now bring the case before this court for revision.

On behalf of the Fort Worth & New Orleans Railway Company the following errors are assigned:

"1. The trial judge erred in concluding, as matter of law, that the failure of plaintiff to maintain its depot within the city of Waxahachie as originally located, and its abandonment of the same, and its failure to maintain and operate its line of railway through the city, worked a forfeiture of its right to recover on the note sued on.

"2. Under the facts found, the trial court erred in failing to render judgment in favor of plaintiff against defendant Williams for the balance due on the note sued on, with costs, and in rendering a general judgment in favor of said defendant, with costs, against plaintiff."

There is no dispute about the facts of the case. The following assignments of error as made by appellant Williams will show the points for which he contends, viz.:

"The court erred in finding as a conclusion of law, from the facts, that the intersection of plaintiff's line of railway with the Central Texas & Northwestern Railway, as originally made, was a compliance with plaintiff's contract in that particular.

"The court erred in finding that such an intersection as was thus made outside, and failure to make the same inside, the corporate limits of the city was not a breach of plaintiff's contract.

"The court erred in the third conclusion of law, to-wit, that the failure of plaintiff to maintain its depot within the city of Waxahachie as originally located, and its abandonment of the same and its failure to maintain and operate its line of railway through the city, does not entitle the defendant to recover of plaintiff by reason of payments made and credits on the note sued on."

We will notice these assignments in the first place. It may be that according to the terms of the note sued upon and the contract between the parties that the making of "the intersection" by the railway com-

pany as specified in the contract, is made a condition *precedent* to the payment of the *last* installment of the note, hence it becomes necessary to decide whether "the intersection" as made in fact was a compliance with the contract, as held by the court below.   It can not be denied that the word "at," when used in reference to place, frequently means "in" or "within," but not always.   It sometimes denotes nearness, or proximity.   Winfield Adj. Words, etc., p. 52.   That is its primary significance, and it is less definite than "in" or "on."   "At the house, may be *in* or *near* the house."   Webster's Unab. Dic., "At."   Its significance would generally be controlled by the context and attending circumstances (if any) denoting the precise sense in which it is used. But in the present instance there was no proof offered to illustrate the meaning which the parties to the contract intended should be attached to the term, nor is any extraneous reason shown why "the intersection" should have been made within the corporate limits of the city of Waxahachie instead of *near* that city.   We conclude that the contract bound the railway company to make the intersection *near* to the city of Waxahachie, but not necessarily within its corporate limits, and that the exact locality of the intersection (subject to the above qualification) was left to "the reasonable discretion" of the company; as was said by the Supreme Court of New Jersey upon an analogous question. State ex rel. Railway v. City of Camden, 9 Vroom (38 N. J.), 299; Railway .v. The State, 50 Ala., 172.   This view is strengthened by the fact that the contract expressly requires the depot to be established "*in*" the city of Waxahachie, while there is no such express requirement in reference to the point of intersection.   The court below did not, therefore, err in holding that the location of "the intersection" by the company at a point within "one hundred yards" of the city of Waxahachie was a substantial compliance with the terms of the contract in this particular.

We are also of the opinion that the court did not err in refusing to allow appellant Williams to recover back the two sums of money which he had paid on the note sued upon, as these installments fell due under the contract.   He sought to recover these sums by reason, as he claims, of a breach of the conditions of the bond in consequence of the company's failure "to maintain its depot within the city of Waxahachie as originally located," etc., as we have already explained.   Upon this appeal he only seeks to recover upon the bond his pro rata of the subscriptions already paid as the liquidated damages contemplated by the parties; but the bond does not embrace these acts of the company.   It only extends to and includes the performance of the contract up to the making of the intersection as specified in the contract; but does not bind the company, like the contract, "to maintain its depot in Waxahachie and its line of railway through that city."   There may be a clear breach of the contract in this particular (which is not necessary

to decide), but not of the bond, and this seems to be conceded by Williams' counsel, hence his position in reference to the place of intersection, of which we have already disposed. Besides, we think that the appellant Williams could not recover on the bond in this case even if there were a breach thereof, and if we should hold that the damages are liquidated. Neither the trustees to whom the bond is made payable nor any other than himself of the beneficiaries therein are parties to this suit. The bond is a joint, not a several, obligation, and clearly appellant Williams can not sue alone and recover upon the bond without at least showing the refusal of the trustees to join in the action, and even in that case the parties at interest should be brought into court. The amount would have been beyond the jurisdiction of the County Court. If Williams should be allowed to sue alone upon the bond for his proportion of the damages, then all of the other beneficiaries could do likewise, and thus the defendant would be subjected to the expense and harassment of as many suits as there are beneficiaries. Stachely v. Peirce, 28 Texas, 328; 1 Pars. on Con., pp. 13, 14.

What we have said disposes of Williams' appeal. We recur to the assignments made by the railway company. We are of the opinion that they are well taken. As we have said, the note which is the basis of this action, like all of the other notes, and according to the terms of the contract, is payable in installments as the work progressed, and the maintenance by the company of its depot as originally located and its line of railway through the city of Waxahachie is not made, by either the terms of the note or the contract, a condition precedent to the payment or recovery of any one of the installments of the note; and the courts will not in such case ingraft such a condition upon the contract in contravention of the expressed intention of the parties. The courts should enforce the contract as made, and not attempt to make a different one for the parties. It may be remarked, that the leading purpose of the contract and the subsidy was to secure railway facilities between the cities of Fort Worth and Waxahachie, and this the citizens of the latter city obtained and now enjoy through the appellant, the Fort Worth & New Orleans Railway Company, as found by the court below, though it is now using the depot and a portion of the line of another railway company, but still within the city limits. In the very nature of things, under the circumstances, the maintenance in the future of the depot and railway as originally located could not have been made conditions precedent to the payment of the notes given for the subscriptions. That can not be a condition precedent which may not occur, if at all, until long after the note by its terms would fully mature and become unconditionally payable. We think that the court erred in holding that the failure of the railway company to maintain its depot as originally located, etc., "worked a forfeiture of the right of recovery upon the note sued upon." Railway v. Butler, 50

Cal., 574; Railway v. Stockton, 51 Cal., 328; Seley v. Railway, 2 Ct. App. C. C., sec. 87, and authorities cited; Williams v. Rogan, 59 Texas, 438; Jackson v. Stockbridge, 29 Texas, 394. The remedy of the appellant Williams for such a breach of the contract by the railway company (if any breach is thus shown) occurring subsequent to the maturity of the note is not upon the bond, which was not thereby broken; but for such damages as he has sustained by reason of this breach of the contract, if he has sustained any that the law will recognize. True, such damages if proved could be offset to the action upon the note (authorities, supra), but in this case, while he pleaded such claim for damages resulting from the depreciation of the value of his property in consequence of the abandonment of the depot as originally located under the contract, as we have seen, still, the court sustained exceptions to this plea, and he has not assigned this action of the court as error. Under such circumstances the proper practice is to reverse and render the judgment in favor of the company for the remaining installments due upon the note. We do not, therefore, decide whether the failure of the company to maintain the depot as originally located constitutes a breach of the contract in this particular or not; as that question need not now be determined, in view of the failure of Williams to assign as error the action of the court in dismissing his claim for damages on account of this alleged breach of the contract. We have decided, however, and do decide, that this matter gave no right to recover on the bond, and does not prevent a recovery upon the note.

We conclude that the judgment should be reversed and here rendered in favor of the appellant railway company against the defendant below, John G. Williams, for $200, with interest thereon from the 10th day of May, 1886, at 8 per cent per annum, and for the further sum of $200, with the like rate of interest from the 1st day of June, 1886, and for all costs in this behalf incurred in any of the courts.

*Reversed and rendered.*

Delivered December 15, 1891.